UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
IN RE MERRILL LYNCH RESEARCH　　　　:　　02 MDL 1484 (JFK)
REPORTS SECURITIES LITIGATION　　　　:
------------------------------------x
This case relates to:　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
RONALD VENTURA,　　　　　　　　　　　　:　　07-CV-6677 (JFK)
　　　　　　Plaintiff,　　　　　　　　　　　:
　　-against-　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
MERRILL LYNCH & CO., INC., MERRILL　　:
LYNCH, PIERCE, FENNER & SMITH, INC.,　:
and HENRY BLODGET　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　　　　　　　:
------------------------------------x

REPLY MEMORANDUM OF LAW OF MERRILL LYNCH & CO., INC. AND MERRILL
LYNCH, PIERCE, FENNER & SMITH INCORPORATED IN
FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Jay B. Kasner
Scott D. Musoff
Joanne Gaboriault
SKADDEN, ARPS, SLATE,
　MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants Merrill Lynch & Co.,
　Inc. and Merrill Lynch, Pierce, Fenner & Smith
　Incorporated

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT

I.   PLAINTIFF HAS FAILED TO PLEAD THAT ANY MISSTATEMENT BY
     MERRILL LYNCH IS THE PROXIMATE CAUSE OF HIS ALLEGED LOSSES .... 2

     A.   Plaintiff Has Failed to Plead That Any Corrective Disclosure of a False
          Statement of Opinion Caused His Purported Loss ........................ 2

     B.   Plaintiff Has Failed to Plead that Merrill Lynch Omitted to Disclose Material
          Known Risks Concerning CMGI Which Materialized, Causing Plaintiff's Pur-
          ported Losses ................................................................ 5

II.  THE COMPLAINT FAILS TO PLEAD SCIENTER ........................... 7

III. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR COMMON LAW FRAUD ... 7

IV.  THE SUPREME COURT'S DECISION IN DABIT DID NOT ALTER THE
     SUPREME COURT'S HOLDING IN BLUE CHIP STAMPS THAT THERE IS NO
     PRIVATE REMEDY UNDER SECTION 10(B) OF THE EXCHANGE ACT FOR
     PERSONS WHO ALLEGE THEY HELD SECURITIES IN RELIANCE ON A MIS-
     REPRESENTATION .............................................................. 8

CONCLUSION ................................................................................ 9

**TABLE OF AUTHORITIES**

CASES                                                                                                      PAGE(S)

ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) .............. 7

Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975) .......................... 8

Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) ............................ 2

Fogarazzo v. Lehman Bros., Inc., 341 F. Supp. 2d 274 (S.D.N.Y. 2004) ................ 3, 4

In re IBM Corp. Securities Litigation, 163 F.3d 102 (2d Cir. 1998) ...................... 4

Joffee v. Lehman Brothers, Inc., 410 F. Supp. 2d 187 (S.D. N.Y. 2006), aff'd,
    209 Fed. App'x 80, 2006 U.S. App. LEXIS 31487 (2d Cir. Dec. 16, 2006) ..... 2, 3, 4, 6

Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir.),
    cert. denied, 546 U.S. 935 (2005) ................................. *passim*

Liu v. Credit Suisse First Boston Corp. (In re IPO Securities Litigation),
    399 F. Supp. 2d 298 (S.D.N.Y. 2005) ................................... 2-3, 4

Marbury Management, Inc. v. Kohn, 629 F.2d 705 (2d Cir. 1980) ....................... 7

Matusovsky v. Merrill Lynch, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ................. 5

In re Merrill Lynch & Co. Research Reports Securities Litigation,
    273 F. Supp. 2d 351 (S.D.N.Y 2003), aff'd in part, reversed in part sub nom.,
    Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir.),
    cert. denied, 546 U.S. 935 (2005) ...................................... 3, 7

In re Merrill Lynch & Co. Research Reports Securities Litigation,
    02 MDL 1484, 2007 U.S. Dist. LEXIS 65372 (S.D.N.Y. Sept. 5, 2007) .............. 1

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006) ............. 1, 8, 9

Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146 (S.D.N.Y. 2004) ................ 3

Salomon Analyst Level 3 Litigation, 350 F. Supp. 2d 477 (S.D.N.Y. 2004) ................ 3

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007) .................... 7

## **PRELIMINARY STATEMENT**

Relying on his mantra that "this case is not Lentell" (Opp'n at 1, 2), setting up straw man arguments and misstating the facts and the law, plaintiff Ronald Ventura ("plaintiff" or "Ventura") fails to address Merrill Lynch's arguments and authorities in any meaningful or direct way. As this Court recognized in approving the settlements from which Ventura elected to exclude himself, in light of Lentell, "[h]ad the plaintiffs not settled and pursued the litigation of these Actions, the almost certain result would have been complete non-recovery." In re Merrill Lynch Research Reports Sec. Litig., 02 MDL 1484(JFK), 2007 U.S. Dist LEXIS 65372, at *31 (S.D.N.Y. Sept. 5, 2007). Though plaintiff wishes it were otherwise, the Second Circuit's decision in Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005), squarely controls this case and compels its dismissal.

Plaintiff has not sufficiently pled any misstatement of material fact by Merrill Lynch regarding CMGI, let alone one that could plausibly have caused his losses. Indeed, plaintiff concedes that Merrill Lynch did not misstate any financial information about CMGI (Opp'n at 7). Yet, contradictorily, Ventura continues to press his baseless conclusory assertion that Merrill Lynch allegedly failed to disclose that CMGI engaged in improper revenue recognition practices and was "double-counting revenues." Plaintiff also fails to address Supreme Court precedent regarding the pleading of scienter and makes the frivolous argument that the Supreme Court held in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006), that section 10(b) of the Exchange Act provides a remedy to persons who allege that a "fraud" induced them not to sell their securities. For the reasons stated in Merrill Lynch's opening brief and as set forth herein, Ventura's complaint should be dismissed with prejudice without leave to

replead.

## ARGUMENT

I. **PLAINTIFF HAS FAILED TO PLEAD THAT ANY MISSTATEMENT BY MERRILL LYNCH IS THE PROXIMATE CAUSE OF HIS ALLEGED LOSSES**

Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005), sets forth the law of the Second Circuit with respect to the requirements for pleading loss causation. "[T]o establish loss causation 'a plaintiff must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered,' *i.e.*, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." Id. at 173 (alteration in original and citation omitted). Thus, to plead loss causation, plaintiff must allege "that the market reacted negatively to a corrective disclosure," or that "Merrill misstated or omitted risks that did lead to the loss." Id. at 175. Plaintiff here has done neither.

A. Plaintiff Has Failed to Plead That Any Corrective Disclosure of a False Statement of Opinion Caused His Purported Loss

Plaintiff concedes that Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), "did not disturb this Circuit's existing loss causation law" (Opp'n at 14), yet erroneously attempts to argue that Dura does not require what the Second Circuit plainly does require, viz., "an explicit corrective disclosure . . . that Henry Blodget did not believe the opinions expressed in his reports." Opp'n at 14; see Lentell, 396 F.3d at 175 & n.4; see also Joffee v. Lehman Bros., Inc., 410 F. Supp. 2d 187, 193 (S.D.N.Y. 2006), aff'd, 209 F. App'x 80 (2d Cir. 2006) ("[T]o plead that such statements of opinion actually caused Plaintiffs' damages, it is critical for Plaintiffs to allege that the 'relevant truth,' i.e., the alleged dishonesty of the opinions, is revealed to the market.") (citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., No.

2

05 Civ. 1898, 2005 U.S. Dist. LEXIS 19506, at *27 (S.D.N.Y. Sept. 6, 2005)); Liu v. Credit Suisse First Boston Corp. (In re IPO Sec. Litig.), 399 F. Supp. 2d 298, 307 (S.D.N.Y. 2005) (same). Not only did Dura not change the law of the Circuit, it also did not describe what was necessary to plead loss causation as plaintiff incorrectly asserts; rather it described what was insufficient to plead loss causation, i.e., that plaintiff was injured by purchasing stock that was "artificially inflated." See Dura, 544 U.S. at 347. Thus, plaintiff's arguments at pages 13-15 of his brief are unavailing.

Moreover, as a threshold matter, plaintiff has not alleged any facts in support of his conclusory allegation that Mr. Blodget did not actually hold the opinions expressed in each and every CMGI report challenged.[1] Although Ventura attempts to rely on the pre-Lentell decision in Fogarazzo v. Lehman Bros., Inc., 341 F. Supp. 2d 274 (S.D.N.Y. 2004), in support of his contention that he adequately pleads loss causation as to Merrill Lynch's "Accumulate/Buy" rating of CMGI's stock (Opp'n at 7-8), such reliance fails for the very same reasons identified by Judge Sweet in Joffee, 410 F. Supp. 2d 187:

> The Second Circuit [in Lentell] went on to reiterate that in a securities case, to

---

[1] As set forth in the authorities cited by Merrill Lynch (at 21-22) in its opening brief, to challenge a statement of opinion or belief, plaintiff must allege, for every such statement challenged, specific contemporaneous facts or data that are inconsistent with the opinion. See In re Merrill Lynch & Co. Research Reports Sec. Litig., 273 F. Supp. 2d 351, 372-73 (S.D.N.Y. 2003) (citing cases); see also Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 153-56 (S.D.N.Y. 2004) ("[P]laintiffs . . . point to no inconsistent statements or actions by defendants from which a factfinder could infer that the published opinions were not truly held.") Even In re Salomon Analyst Level 3 Litigation, 350 F. Supp. 2d 477 (S.D.N.Y. 2004) cited by plaintiff (Opp'n at 21) makes clear that significantly more than what Ventura has pled here is required to plead a false statement. See id. at 493 (falsity of opinion pled with respect to reports published on or after April 18, 2001, because while the analyst recommended the stocks as a "buy" he privately stated in an e-mail on that date that the stock "must be downgraded"). Cf. Opp'n at 4-5.

3

>establish loss causation, a plaintiff must allege "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security."
>
>Plaintiff's reliance on the Honorable Shira A. Scheindlin's decision in Fogarazzo v. Lehman Bros., Inc., 341 F. Supp. 2d 274 (S.D.N.Y. 2004) . . . to argue the contrary is misplaced because that decision (i) pre-dates Dura and the Second Circuit's extensive treatment of the loss causation requirement as applied to research analyst cases in Lentell; and (ii) is premised on Suez Equity Investors, L.P. v. Toronto-Dominion Bank, which the Second Circuit clarified in Emergent Capital and in Lentell. . . . Indeed, since Dura and Lentell were issued, Judge Scheindlin has herself revisited the loss causation requirement as applied to research analyst cases in Liu[], 399 F. Supp. 2d 369.

Joffee, 410 F. Supp. 2d at 193 (citations omitted). This Court should reject likewise reject plaintiff's contention that he has adequately pled loss causation as to any of Merrill Lynch's "accumulate-buy" recommendations[2] or price targets[3] on CMGI's common stock based on the pre-Lentell reasoning of Fogarazzo, supra.

---

[2] Merrill Lynch's rating system is described at length at pages 4-6 of Merrill Lynch's opening brief. Plaintiff's contention that CMGI's rating denoted that CMGI had a "[s]olid near-term cash position – enough to reach profitability" (Opp'n at 5) is incorrect. Plaintiff is selectively misquoting an August 7, 2000 Internet Sector comment, stating that, as of that date, "[m]ost of the stocks at each rating have the following characteristics . . . ." Musoff Decl. Ex. 4, CMGI 0030-0033; compare Opp'n at 5 (citing Compl. ¶ 15). As set forth in the opening brief (at 11-12), Merrill Lynch gave specific information about CMGI's cash position on June 14, July 21, September 22 and October 4, 2000 and, accordingly, no one could have been misled into believing that CMGI was flush with cash on August 7, 2000, as plaintiff seems to suggest, much less that Merrill was guaranteeing that CMGI would not have liquidity problems. See In re IBM Corp. Sec. Litig., 163 F.3d 102, 108 (2d Cir. 1998).

[3] Although the price targets are the only aspect of Merrill Lynch's research reports on CMGI upon which plaintiff alleges he "affirmatively relied" (see Compl. ¶¶ 1, 103, 134; Opp'n at 15), and plaintiff evidently has abandoned his challenge to the price targets in view of Merrill Lynch's arguments in its opening brief (at 12-13, 16), plaintiff nevertheless presses the frivolous argument – without any citation to authority – that he adequately pleads loss causation because he pleads "actual reliance." (Opp'n at 15.)

4

B.  Plaintiff Has Failed to Plead that Merrill Lynch Omitted to
Disclose Material Known Risks Concerning CMGI
<u>Which Materialized, Causing Plaintiff's Purported Losses</u>

Plaintiff has also failed to adequately identify any material risks concerning CMGI that were omitted from the research reports and which caused plaintiff's losses when they materialized. <u>See</u> <u>Lentell</u>, 396 F.3d at 175. As the Second Circuit noted "'conclusions of law or unwarranted deductions of fact are not admitted.'" <u>Id.</u> (citation omitted). Although Ventura now concedes that Merrill Lynch did not "conceal any financial data concerning CMGI" (Opp'n at 7), incomprehensibly, he continues to press his baseless assertion that Merrill Lynch failed to disclose that CMGI "was double counting revenues and would likely burn though its cash on hand much more quickly than observers believed" (Opp'n at 5) and that Merrill Lynch failed to disclose "the true facts concerning the undisclosed risk that CMGI would experience liquidity problems due to its revenue recognition practices" (<u>id.</u> at 10). As set forth in Merrill Lynch's opening brief (at 16-18, 21-22), there are simply no facts alleged to support the conclusion that CMGI's was misstating its revenues; that Merrill Lynch knew but failed to disclose that CMGI was misstating its revenue; let alone that improper revenue recognition practices were the reason CMGI's stock price declined on October 4, 2000.

Moreover, as detailed in Merrill Lynch's brief (at 8-12), its CMGI research reports contained abundant warnings of the risks associated with CMGI, and specifically described "cash burn" and liquidity issues on June 14, July 21, September 22 and October 4, 2000. (Mem. at 10-12). Where, as here, documents "integral" to plaintiff's complaint contradict plaintiff's allegations of non-disclosure, "those allegations are insufficient to defeat a motion to dismiss." <u>Matusovsky v. Merrill Lynch</u>, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002). Furthermore, it is

5

apparent that information relating to CMGI's cash position contained in Merrill Lynch's research reports came from CMGI's own disclosures to the market (see, e.g., Musoff Decl. Ex. 4 at CMGI 0018). Accordingly, Merrill Lynch's mere repetition of these facts could not have caused Ventura's alleged losses because the information was already disclosed.

Finally, although in his complaint Ventura asserts that "concealed risks concerning CMGI's true financial condition" were revealed on October 3, 2000 (Compl. ¶ 2), he now incomprehensibly asserts in his opposition brief that he "has located press accounts showing that CMGI shares dropped on several days in September 2000 due to concerns about CMGI's liquidity, which would further establish loss causation based on the materialization of a concealed risk." (Opp'n at 24.) Such facts would establish nothing of the kind. Instead, as was the case in Lentell, 396 F.3d 161, and Joffee, 410 F. Supp. 2d 187, and as set for in Merrill Lynch's opening brief (at 18-20), the risks that actually "caused" plaintiff's purported losses – the volatility of the market for internet stocks, CMGI's dependence on the health of the internet market and specifics concerning CMGI's spending and cash position – were fully disclosed, as plaintiff has conceded (Opp'n at 7). Ventura's characterization of Merrill Lynch's warnings of the very risks that materialized as "boilerplate disclosures," (Opp'n at 5) is absurd. Similarly absurd is plaintiff's assertion that Merrill Lynch bears the "very high burden of establishing that their misstatements are immaterial of as a matter of law." Opp'n at 7. To the contrary, it is plaintiff's burden to plead that a material misstatement – with the particularity required by section 21D(b)(1) of the PSLRA (Mem. at 21-22) – caused his alleged losses. He has not done so.

## II. The Complaint Fails to Plead Scienter

Ventura's failure even to cite the Supreme Court's decision in <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 127 S. Ct. 2499 (2007) is telling, if not sanctionable. Ventura has failed to plead any facts supporting a cogent inference of fraudulent intent as opposed to the more plausible explanation for Mr. Blodget's research reports on CMGI, i.e., that he was covering companies of interest to the market because that is what he was paid to do. See id. at 2504-05; see also <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 104 (2d Cir. 2007) (generic motives supply a "plausible nonculpable explanation" that is more likely than an intent to defraud). Although such an allegation would still be vastly insufficient, plaintiff does not even allege that CMGI had an investment banking relationship with Merrill Lynch.

## III. Plaintiff Has Failed to State a Claim for Common Law Fraud

Plaintiff fails to plead a fraud claim for all of the reasons stated in Merrill Lynch's opening brief. (Mem. at 24-25.) His citation to an irrelevant per curiam opinion from the First Department in 1928 (addressing the calculation of damages) or <u>Marbury Management, Inc. v. Kohn</u>, 629 F.2d 705, 721 (2d Cir. 1980), which was essentially disavowed in <u>Lentell</u>, see 396 F.3d at 174; <u>see also Merrill Lynch Research Reports</u>, 273 F. Supp. 2d at 367, does nothing to address the pleading defects identified by Merrill Lynch. (Mem. at 24-25.) Moreover, Ventura relies on a "fraud on the market" presumption of reliance. (Compl. ¶¶ 110-113.) He does not allege that he ever received or read Merrill Lynch's research reports on CMGI and he plainly did not rely upon the $300 per share price target (Mem. at 12-13, 16) – the only aspect of the reports as to which plaintiff alleges "affirmatively relied" (Compl. ¶¶ 1, 103, 134; Opp'n at 15).

**IV.  The Supreme Court's Decision in <u>Dabit</u> Did Not Alter the Supreme Court's Holding in <u>Blue Chip Stamps</u> That There Is No Private Remedy Under Section 10(b) of the Exchange Act For Persons Who Allege They Held Securities in Reliance on a Misrepresentation**

Plaintiff also makes the frivolous argument that the Supreme Court's decision in <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit</u>, 547 U.S. 71 (2006), eliminated the purchaser-seller requirement for persons asserting a private right of action under section 10(b) of the Exchange Act, giving him a remedy under section 10(b) for "holding" CMGI stock. (Opp'n at 15-19.) <u>Dabit</u>, however, makes clear: (i) <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723 (1975), "limit[ed] the private remedy" under section 10(b) and Rule 10b-5 to persons allegedly harmed in connection with purchases or sales of securities as a "policy consideration" due to "the widespread recognition that 'litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and kind from that which accompanies litigation in general;'" <u>Dabit</u>, 547 U.S. at 80 (citation and quotation marks omitted); (ii) that "[u]nlike the <u>Birnbaum [v. Newport Steel Corp.</u>, 193 F.2d 461 (2d Cir. 1952)] court which relied on Rule 10b-5's text in crafting its purchaser-seller limitation, th[e] [Supreme Court] in <u>Blue Chip Stamps</u> relied chiefly, and candidly, on 'policy considerations' in adopting that limitation. The <u>Blue Chip Stamps</u> Court purported to define the scope of a private right of action under Rule 10b-5 – not to define the words 'in connection with the purchase or sale;'" <u>id.</u> at 84 (citations omitted); and (iii) the Court "d[id] not [in <u>Dabit</u>] revisit the <u>Blue Chip Stamps</u> Court's understanding of the equities involved in limiting the availability of private remedies under federal law," <u>id.</u> at 88 n.13. (<u>Cf.</u> Opp'n at 15-18.)

Merrill Lynch did not cite <u>Blue Chip Stamps</u> for the proposition that plaintiff's claims do "not meet the 'in connection with' requirement" (Opp'n at 18), it cited the case (and <u>Dabit</u>) for the proposition that "[t]he federal securities laws do not provide a remedy for 'holding' or failing to sell shares." (Mem. at 15 n.9.) That is a correct statement of the law and, as noted above, <u>Dabit</u> did not "revisit" <u>Blue Chip Stamps</u> in this regard.

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed with prejudice. Leave to replead should be denied because, in view of the myriad deficiencies in the complaint, any amendment would be futile.

Dated: New York, New York
November 19, 2007

Respectfully submitted,

_____
Jay B. Kasner
Scott D. Musoff
Joanne Gaboriault
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Defendants Merrill Lynch & Co., Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated