UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RONALD VENTURA,                                       :                    No. 07-CV-6677 (JFK)
                                                      :
                      Plaintiff,                      :
                                                      :
          - against-                                  :
                                                      :
                                                      :
MERRILL LYNCH & CO., INC., MERRILL                    :
LYNCH, PIERCE, FENNER & SMITH, INC.,                  :
and HENRY BLODGET,                                    :
                                                      :
                      Defendants.                     :
                                                      :
-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS



LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C.
460 Park Avenue, 21st Floor
New York, New York 10022
(212) 838-3221


*Counsel for Plaintiff*
*Ronald Ventura*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT: THIS CASE IS NOT LENTELL............................................ 1

I.     THE STANDARD ON A MOTION TO DISMISS........................................................... 2

II.    VENTURA PLEADS THAT DEFENDANTS' RESEARCH REPORTS WERE
       FALSE AND MISLEADING............................................................................................ 4

       A.    Statements of opinion are clearly actionable when the opinions expressed
             are not believed by the speaker and are material................................................... 4

       B.    Defendants' cautionary statements did not render their false and misleading
             statements immaterial as a matter of law................................................................ 5

       C.    The fact that Merrill Lynch did not conceal any financial data concerning
             CMGI, per se, does not absolve Merrill Lynch from its false statements of
             opinion..................................................................................................................... 7

III.   VENTURA PLEADS LOSS CAUSATION.................................................................... 9

       A.    Ventura pleads that CMGI shares dropped in price when material negative
             information concerning CMGI's liquidity was revealed.......................................... 9

       B.    Ventura pleads materialization of a concealed risk. ............................................ 11

       C.    Ventura is not required to plead a "mirror image" disclosure to establish
             loss causation for purposes of a motion to dismiss. ............................................ 13

       D.    Ventura pleads loss causation based on actual reliance....................................... 15

IV.    VENTURA PLEADS SCIENTER.................................................................................. 19

V.     VENTURA PLEADS COMMON LAW FRAUD........................................................... 21

VI.    LEAVE TO REPLEAD................................................................................................... 23

CONCLUSION............................................................................................................................. 25

TABLE OF AUTHORITIES

**Cases**

ABF Capital Management v. Askin Capital Management, L.P., 957 F. Supp. 1308 (S.D.N.Y. 1995) (Sweet, J.) .......................................................................................... 22

Abrahams v. Appellate Div. of Supreme Court, 473 F. Supp. 2d 550 (S.D.N.Y. 2007) ................ 3

Acito v. Imcera Group, Inc., 47 F.3d 47 (2d Cir.1995) ................ 23

Alvin S. Schwartz, M.D., P.A. v. O'Grady, No. 86-CV-4243, 1990 WL 156274 (S.D.N.Y. Oct. 12, 1990) ........................................................................................ 22

Arfons v. E.I. DuPont de Nemours & Co., 261 F.2d 434 (2d Cir. 1958). ........................................ 3

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007) ................................................................ 6

Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 95 S.Ct. 1917 (1975) ................. 16,17,18

Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952) ........................................ 16,17,18

Catton v. Def. Tech. Sys., 457 F. Supp. 2d 374 (S.D.N.Y. 2006) ................................................ 12

Channel Master Corp. v. Aluminum Limited Sales, Inc. 4 N.Y.2d 403, 176 N.Y.S.2d 259 (1958) .................................................................................................................... 22

Citibank, N.A. v. K-H Corp., 968 F.2d 1489 (2d Cir. 1992) ........................................................ 21

City of Sterling Heights Police and Fire Retirement System v. Abbey National PLC, 423 F. Supp.2d 348 (S.D.N.Y.2006) ................................................................................ 16

Conley v. Gibson, 355 U.S. 41 (1957) .......................................................................................... 6

Continental Insurance Co. v. Mercadante, 222 A.D. 181, 225 N.Y.S. 488 (1927) ..................... 22

Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989) ............................................................................. 20

Cumberland Oil Corp. v. Thropp, 791 F.2d 1037 (2d Cir. 1986). ................................................ 22

Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 126 S.Ct. 1503 164 L.Ed.2d 179 (2006 ) .......................................................................................................... 15,16,18,19

David v. Belmont, 291 Mass. 450 197 N.E. 83 (Mass. 1935) ..................................................... 23

DeMarco v. Lehman Bros. Inc., 309 F. Supp. 2d 631 (S.D.N.Y.2004) .............................. 6, 11,15

_Dura Pharmaceuticals, Inc. v. Broudo_, 544 U.S. 336 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)................................................................................................................. 10,14

_Emergent Capital Inv. Mgmt. LLC v. Stonepath Group, Inc._, 343 F.3d 189 (2d Cir. 2003) .. 12,14

_Filler v. Hanvit Bank_, 339 F. Supp. 2d 553 (S.D.N.Y. 2004). ....................................................... 2

_Fogarazzo v. Lehman Bros, Inc._, 341 F. Supp. 2d 274 (S.D.N.Y. 2004) ....................................... 8

_Fottler v. Moseley_, 185 Mass 563 70 N.E. 2d 1040 (Mass. 1904). ............................................... 23

_Ganino v. Citizens Utilities Co._, 228 F. 3d 162 (2d Cir. 2000) ................................................... 7,20

_Gerstle v. Gamble-Skogmo, Inc._, 478 F.2d 1281 (2d Cir. 1973)...................................................... 4

_Goldman v. Belden_, 754 F.2d 1059 (2d Cir.1985) ......................................................................... 7

_Hadden v. Consolidated Edison Co._ 382 N.E. 2d 1136 (N.Y. 1978) ........................................... 22

_Hayden v. County of Nassau_, 180 F.3d 42 (2d Cir.1999). ............................................................. 3

_Hillel v. Motor Haulage Co._, 140 N.Y.S.2d 51 (N.Y. Sup. Ct. Kings Cty. 1955)....................... 22

_In re Alger, Columbia, Janus, MFS, One Group, Putnam Mut. Fund_ , 320 F. Supp. 2d 352 (D. Md. 2004) ......................................................................................................................... 18

_In re Apollo Group Inc. Securities Litigation_, --- F. Supp.2d ----, 2007 WL 2681795  (D. Ariz. September 11, 2007 ..................................................................................................... 5

_In re Initial Pub. Offering See. Litig._, 297 F. Supp. 2d 668 (S.D.N.Y. 2003).............................. 14

_In re Initial Pub. Ofering Sec. Litig._, 399 F. Supp. 2d 261 (S.D.N.Y. 2005) .............................. 14

_In re Merrill Lynch & Co. Research Reports Sec. Litig._, 273 F. Supp. 2d 351 (S.D.N.Y. 2003) ....................................................................................................................................... 1

_In re Motorola Sec. Litig._, No. 03-C-287, 2007 WL 487738 (N.D. Ill. Feb. 8, 2002) ................ 15

_In re Parmalat See. Litig._, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) ........................................... 12,15

_In re Prudential Sec. Inc., Ltd. Partnerships Litig._, 930 F. Supp. 68 (S.D.N.Y. 1996).............. 6, 9

_In re Salomon Analyst Level 3 Litig,_, 350 F. Supp. 2d 477 (S.D.N.Y. 2004).............................. 21

_In re Time Warner, Inc. Sec. Litig._, 9 F.3d 259 (2d Cir.1993) ...................................................... 5

ii

Iqbal v. Hasty, 490 F.3d 143, 152 (2d Cir. 2007) .......................................................................... 6

Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969)............................................................................................................... 21

Kaplan v. Rose, 49 F.3d 1363 (9th Cir .1994). ............................................................................. 5

Kaufman v. Delafield, 224 A.D. 29, 229 N.Y.S.2d 545 (1st Dep't 1928) ..................................... 19

Lapin v. Goldman Sachs Group, Inc., No. 04-CV-2236 (KRK), 2006 WL 2850226 (S.D.N.Y. Sept. 29, 2006)........................................................................................................ 2, 6

Lefkowitz v. ITM, Inc., 52 Misc.2d 39 ( N.Y. Sup. Ct. 1966) ...................................................... 22

Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir.), cert. denied, 546 U.S. 935 (2005)...................................................................................................................................passim

Marbury Management, Inc. v. Kohn, 629 F.2d 705 (2d Cir.), cert. denied, 449 U.S. 1011 (1980). ............................................................................................................... 19,22,23

Mayer v. Mylod, 988 F.2d 635, 639 (6th Cir. 1993) ...................................................................... 5

Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,716 F. Supp. 1504 (S.D.N.Y. 1989) ................ 23

Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02-CV-1230 (LMM), 2004 WL 1124660 (S.D.N.Y. May 20, 2004) ..................................................................................... 23

National Fire Ins. Co. of Pittsburgh v. Califinvest, 1992 WL 35017 (S.D.N.Y. Feb. 14, 1992) ......................................................................................................................................... 3

Novak v. Kasaks 216 F.3d 300 (2d Cir. 2000) ....................................................................... 19,20

Oliver Schools, Inc. v. Foley, 930 F.2d 248 (2d Cir.1991). ........................................................ 24

Primavera Familienstiftung v. Askin, 130 F. Supp. 2d 450 (S.D.N.Y. 1995) .............................. 22

Ruskin v. TIG Holdings, Inc., No. 98-CV-1068 (LLS), 2000 WL 1154278 (S.D.N.Y. Aug. 14, 2000) ..................................................................................................................... 3,6

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)......................................................................... 19

Scheuer v. Rhodes, 416 U.S. 232 (1974). ..................................................................................... 4

SEC v. Zandford, 535 U.S. 813 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002)....................................... 17

Sheppard v. Beerman, 18 F.3d 147 (2d Cir.1994) ......................................................................... 3

iii

Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87 (2d Cir. 2001)...... 12, 13,15

Swack v. Credit Suisse First Boston, 383 F. Supp. 2d 223 (D.Mass. 2004)................................. 12

Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165,
    30 L.Ed.2d 128 (1971)................................................................................................................ 17

Swack v. Credit Suisse First Boston, 383 F. Supp. 2d 223 (D. Mass. 2004)................................ 15

Teamsters Local 445 Freight Div. v. Bombardier, Inc., No. 05-CV-1898 (SAS), 2005 WL
    2148919 (S.D.N.Y. Sept. 6, 2005).............................................................................................. 13

U.S. v. O'Hagan, 521 U.S. 642, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997) .................................. 17

Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083 111 S.Ct. 2749, 115 L.Ed.2d 929
    (1991)............................................................................................................................................ 4

Weinberger v. Kendrick, 698 F.2d 61 (2d Cir. 1982)................................................................... 22

Yoder v. Orthomolecular Nutrition Institute, Inc., 751 F.2d 555 (2d Cir. 1985) ......................... 20

## PRELIMINARY STATEMENT: THIS CASE IS NOT *LENTELL*

Defendants attempt to tether plaintiff Ronald Ventura ("Ventura" or "plaintiff") to the

rulings of Judge Pollack and the Second Circuit in the familiar Merrill Lynch analyst cases in

which plaintiffs failed to state a claim for securities fraud against Merrill Lynch and Henry

Blodget due to their failure to plead that the shares of the subject securities ever dropped after the

disclosure of any adverse, material information that touched upon the defendants' alleged

misrepresentations. See In re Merrill Lynch & Co. Research Reports Sec. Litig., 273 F. Supp. 2d

351 (S.D.N.Y.), aff'd in part and rev'd in part sub nom., Lentell v. Merrill Lynch & Co., 396

F.3d 161 (2d Cir.), cert. denied, 546 U.S. 935 (2005), hereinafter referred to as "Lentell".

But this case is not Lentell. First, here, unlike in Lentell, Ventura has pleaded that shares

of the subject company, CMGI, Inc. ("CMGI") dropped significantly when undisclosed facts

concerning CMGI's revenues, cash burn and liquidity (which Blodget had identified much earlier

but had not discussed in his reports) were revealed. Compare Complaint ("C") ¶¶ 102, with

Lentell at 175 ("There is no allegation that the market reacted negatively to a corrective

disclosure regarding the falsity of Merrill's "buy" and "accumulate" recommendations and no

allegation that Merrill misstated or omitted risks that did lead to the loss").

Second, Ventura has pleaded that the materialization of risks that Blodget purposely

omitted from his analysis of CMGI caused the drop in the price of CMGI shares, which in turn

damaged Ventura. Compare C ¶¶ 2, 90, 102, 105 with Lentell at 175. ("Nor do plaintiffs allege

that Merrill Lynch concealed or misstated any risks associated with an investment in 24/7 Media

or Interliant, some of which presumably caused plaintiffs' loss").

Third, even if Ventura had not pleaded a drop in CMGI shares as the result of a corrective disclosure and/or materialization of a concealed risk, Ventura is not limited (as class members relying solely on CMGI's share price under the "fraud on the market" doctrine would be) to pleading drops in CMGI's share price to establish causation. Ventura has pleaded actual reliance on Merrill Lynch's false and misleading statements, which, in the case of an individual plaintiff as opposed to a class, is sufficient to establish causation for pleading purposes. See Point III(D), infra.

The fact is, courts have not uniformly dismissed analyst cases over the past five years. It so happens that the Merrill Lynch case addressed by the Second Circuit in Lentell involved a weak complaint. In other analyst cases in which the facts were different (or, perhaps, better-pleaded) courts have not hesitated to deny motions to dismiss. See, e.g., Lapin v. Goldman Sachs Group, Inc., No. 04-CV-2236 (KRK), 2006 WL 2850226 at *12 (S.D.N.Y. September 29, 2006); DeMarco v. Lehman Bros. Inc., 309 F. Supp. 2d 631, 634 (S.D.N.Y.2004).

This case is not Lentell. Ventura respectfully requests that this Court, despite its familiarity with the long-running Merrill Lynch analyst litigation, apply its careful attention to Ventura's allegations in this individual complaint, concerning a different issuer company, with a much different chart, and on behalf of an individual investor as opposed to a class. If it gives Ventura no more or less consideration than any other securities fraud plaintiff, the Court will be constrained to deny defendants' motion to dismiss.

I.    THE STANDARD ON A MOTION TO DISMISS

A court "adjudicating a motion to dismiss must accept as true all facts alleged in the complaint and draw all reasonable inferences in the plaintiffs' favor." Filler v. Hanvit Bank, 339

2

F. Supp. 2d 553, 557 (S.D.N.Y. 2004). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court is limited to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." Abrahams v. Appellate Div. of Supreme Court, 473 F. Supp. 2d 550, 554 (S.D.N.Y. 2007), citing Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir.1999). "The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-movant, drawing all reasonable inferences in its favor." Id., citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir.1994)[1].

Defendant's instant motion and "Rule 12(b)(6) motions generally are looked upon with disfavor." Arfons v. E.I. DuPont de Nemours & Co., 261 F.2d 434 (2d Cir. 1958). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Ruskin v. TIG Holdings, Inc., 2000 WL 1154278 at *3 (S.D.N.Y. Aug. 14, 2000) [citations omitted].

In assessing its legal feasibility, the complaint "must be liberally construed, and the allegations must be considered in the light most favorable to the pleaders." National Fire

---

[1] The Second Circuit has observed that traditional Rule 12(b)(6) pleading standards under Fed. R. Civ. P. 8(a) may have been modified to some extent by the U.S. Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1968 (2007), to require some level of factual plausibility. See Iqbal v. Hasty, 490 F.3d 143, 152 (2d Cir. 2007) (noting that U.S. Supreme Court has disavowed the literal interpretation of the "no set of facts" language in Conley v. Gibson, 355 U.S. 41 (1957)). There can be no doubt that plaintiffs' allegations herein are factually plausible in light of the several parallel regulatory actions and proceedings arising from the same facts, and the large body of publicly available information concerning Merrill Lynch and Blodget's research reports.

Ins. Co. of Pittsburgh v. Califinvest, 1992 WL 35017 at *2 (S.D.N.Y. Feb. 14, 1992), (citing

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Defendant's instant motion fails to meet these exacting standards for

dismissal under Fed. R. Civ. P. 12(b)(6), and must be denied.

II.    VENTURA PLEADS THAT DEFENDANTS' RESEARCH REPORTS WERE FALSE
AND MISLEADING

A.    Statements of opinion are clearly actionable when the opinions expressed are not
believed by the speaker and are material.

Defendants cite the controlling case but otherwise ignore the settled principle that a

statement of belief can be actionable where the evidence shows that the speaker did not in fact

hold that belief and the statement made asserted something false or misleading about the subject

matter. See Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1095-1096, 111 S.Ct. 2749,

115 L.Ed.2d 929 (1991). This rule comes with the caveat that the statement of belief must be

material in the context of the other available information. Id. at 1097.

"But not every mixture with the true will neutralize the deceptive. If it would take a

financial analyst to spot the tension between the one and the other, whatever is misleading will

remain materially so, and liability should follow." Id. at 1097, citing Gerstle v. Gamble-Skogmo,

Inc., 478 F.2d 1281, 1297 (2d Cir. 1973) ("[I]t is not sufficient that overtones might have been

picked up by the sensitive antennae of investment analysts").

If Blodget had merely been wrong about CMGI, even carelessly so, instead of

deliberately misrepresenting his beliefs as the complaint alleges, his misstatements would not be

actionable as fraud. A statement of opinion or belief is false or misleading "if (1) the statement is

not actually believed [by the speaker], (2) [it is believed by the speaker, but] there is no

4

reasonable basis for the belief, or (3) the speaker is aware of undisclosed facts tending to seriously undermine the statement's accuracy." In re Apollo Group Inc. Securities Litigation, --- F. Supp.2d ----, 2007 WL 2681795 at *6 (D. Ariz. September 11, 2007); see also In re Time Warner, Inc. Sec. Litig., 9 F.3d 259, 266 (2d Cir.1993) (acknowledging opinions or belief may be actionable pursuant to Virginia Bankshares); Mayer v. Mylod, 988 F.2d 635, 639 (6th Cir. 1993) ("Material statements which contain the speaker's opinion are actionable under Section 10(b) of the Securities Exchange Act if the speaker does not believe the opinion and opinion is not factually well-grounded"); Kaplan v. Rose, 49 F.3d 1363, 1375 (9th Cir .1994).

B.    Defendants' cautionary statements did not render their false and misleading statements immaterial as a matter of law.

Merrill Lynch relies on its boilerplate disclosures of the risks inherent in investing in untested Internet start-ups and attempts to twist these unremarkable statements into a disclosure of the fact that Blodget believed that CMGI should be sold, not bought, and a disclosure of the concealed risks that CMGI was double-counting revenues and would likely burn through its cash on hand much more quickly than market observers believed.

Here, the complaint alleges that the overarching thrust of the analyst reports was contrary to Blodget's true beliefs. Defendants accurately point to discussions of the risks of investing in CMGI that are contained in Merrill Lynch's analyst reports. But these cautionary statements did not blunt the force of the overall message of the reports, which was that Blodget believed that CMGI should be bought and not sold, and believed that CMGI in fact had a "Solid near-term cash position - enough to reach profitability." See C ¶ 15, stating the meaning of the "2-1" rating that Merrill Lynch and Blodget had on CMGI at relevant times. The fact is, even as he issued the

5

reports Blodget believed that CMGI was overstating its revenues and that if you looked too close at CMGI's revenue numbers, they would scare you. See C ¶¶ 31, 94(e).

Instead of writing about these concerns in his reports, Blodget repeated routine warnings in his reports but repeatedly conveyed a strong overall message that CMGI was a good buy at then-current prices.  Despite the cautionary language, overall the reports conveyed an entrancingly powerful message that CMGI was a winner- a "stock of the year."  (See C ¶ 52)

Other courts considering analyst cases have not been persuaded that routine cautionary language in analyst reports renders the overall recommendation of an analyst report immaterial. As one judge of this Court put it: "[The] 'buy' rating is tantamount to a statement that the reader of the reports should discount the skeptical language"). See Lapin v. Goldman Sachs Group, Inc., No. 04-CV-2236 (KRK), 2006 WL 2850226 at *12 (S.D.N.Y. September 29, 2006) (denying motion to dismiss); citing  DeMarco v. Lehman Bros. Inc., 309 F. Supp.2d 631, 634 (S.D.N.Y.2004) (same).  As the Lapin Court put it: "These disclaimers are a far cry from raising awareness of anything akin to the widespread fraud and improper influence alleged in connection with Goldman's analyst reports." Lapin, 2006 WL 2850226 at *12.

Nor did defendants' general observations in their analyst reports to the effect that start-ups are risky and volatile reveal the true nature of CMGI's revenue recognition and liquidity issues. See Ruskin v. TIG Holdings, Inc., No. 98-CV-1068 (LLS), 2000 WL 1154278, at *7 (S.D.N.Y.  Aug. 14, 2000)  (Stanton, J.) ("someone who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away," does not disclose his way out of fraud); see also Credit Suisse First Boston Corp. v. ARM Fin. Group, Inc., 2001 WL 300733, at *8 -*9 (S.D.N.Y. Mar. 28, 2001)

(despite extensive other disclosure, critical fact alleged by plaintiffs was not disclosed and thus investors were not warned of magnitude of risk).

In these circumstances, in which neither Blodget's true beliefs nor the very real risks posed by CMGI's revenue recognition practices were revealed, defendants utterly fail to reach the very high burden of establishing that their misstatements are immaterial as a matter of law. See Ganino v. Citizens Utilities Co., 228 F.3d 162, 167 (2d Cir. 2000) (recognizing that " 'a complaint may not properly be dismissed ... on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.' " (quoting Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985)).

C.    The fact that Merrill Lynch did not conceal any financial data concerning CMGI, per se, does not absolve Merrill Lynch from its false statements of opinion.

Merrill Lynch makes much of the argument that it accurately reported information concerning CMGI's historic revenues, assets and cash burn rate in its analyst reports. This is true as far as it goes, but does not absolve Merrill Lynch from liability for the false opinions that it disseminated after examining the available data.

Judge Scheindlin of this Court had occasion to reject an argument in an analyst case that (as argued by defendants herein) defendants did not affirmatively conceal any financial data concerning an issuer of stock:

> It is true that the Banks did not conceal any facts regarding RSL-they did not withhold information about RSL's debts or assets or about any important financial events in the life of RSL, including the October 1999 $3 million restructuring charge or the July 2000 $48 million write-down. Nor did they conceal it when RSL earnings came in below

7

estimates. What the Banks did do, however, was manipulate these objective facts by misstating the Banks' true opinions of the impact of these events on the investment quality of RSL securities. Rather than identify these events for what they really were-- the first warnings signs of the demise of RSL– the Banks instead injected bullish reports into the market suggesting that RSL was being drastically underpriced, that events such as the restructuring charge were aberrations, and that this was the perfect time to buy RSL stock because it was far cheaper than it ought to have been. The Banks' purportedly expert opinions thus concealed the actual financial state of RSL. In other words, even though the true facts were available for the world to see, by affirmatively opining on the meaning of those facts the Banks obscured the logical conclusion that RSL was failing.

Fogarazzo v. Lehman Bros, Inc., 341 F. Supp. 2d 274, 289-90 (S.D.N.Y. 2004).

The Court elaborated:

By hyping RSL stock, the Banks gave plaintiffs an inaccurate perspective from which to value [RSL] securities... It was foreseeable, in other words, that had the Banks not released the tainted analyst reports, the information already available to the market would have forecast [RSL's] (eventually fatal) liquidity problems.

Id. at 290.

Likewise here, Blodget, had access to more information than public investors, was an expert financial analyst, and held himself out as knowledgeable concerning CMGI. Instead of expressing his reservations concerning CMGI's revenue recognition, specifically his concerns with respect to recognition of affiliate revenue by CMGI that he expressed in his January 20, 2000 e-mail to Ilona Nemeth, he instead merely repeated CMGI management's explanation of its anticipated revenues. See C ¶¶ 64-65.

To put it simply, Blodget was the guy who had looked "under the hood" and carefully examined the sources of CMGI's reported and forecast revenues. In the January 20, 2000 report (issued only 2 days before a secret meeting between Merrill Lynch bankers and a CMGI takeover target, uBid, and only 21 days before the announcement of Merrill Lynch's substantial banking transaction involving CMGI and uBid), Blodget's report effectively gave these revenue streams a

8

clean bill of health and contained no hint of concern that if you "looked too close" the numbers would scare you. This report and recommendation clearly altered the "total mix" of information available to the market and Ventura in a material manner. Thus, by both commission and omission, Blodget and Merrill Lynch made and disseminated material, knowingly false statements.

III.    VENTURA PLEADS LOSS CAUSATION

      A.    <u>Ventura pleads that CMGI shares dropped in price when material negative information concerning CMGI's liquidity was revealed.</u>

Ventura pleads as follows:

CMGI's stock declined when misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the concealed risks to CMGI's business operations and financial operating results, were revealed and/or materialized. These drops in CMGI's share price at the times of the disclosures of material negative facts caused Plaintiff's losses (including without limitation on October 3 and 4, 2000, when Defendants first revealed concerns about CMGI's cash flow and cash burn rate).

( C ¶ 102)

Ventura further pleads:

The decline in CMGI's stock price was a direct and proximate result of the true facts concerning CMGI's cash position and the materialization of the undisclosed risk that CMGI would have liquidity problems finally being revealed to investors and the market. The timing and magnitude of CMGI's stock price declines negate any inference that the loss suffered by Plaintiff was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.

( C ¶ 105)

9

Finally, Ventura pleads that CMGI shares dropped 11.5% when the true facts concerning the undisclosed risk that CMGI would experience liquidity problems due to its revenue recognition practices were revealed by defendants[2].

( C ¶ 2)

These simple allegations are more than enough to satisfy the requirement of <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 345, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). <u>Dura Pharmaceuticals</u> established that in a misrepresentation or omission case under Rule 10b-5(b), a plaintiff must plead facts demonstrating that the misrepresentation or omission upon which plaintiff relied proximately caused the plaintiff's loss. <u>See</u> <u>id.</u> At least in a class action context, this causation will usually (but not always) come in the form of a drop in a company's share price after a "corrective disclosure" of facts that reveal the falsity of the misrepresentations or omissions by the defendant. <u>See</u> <u>id.</u>

As the <u>Dura Pharmaceuticals</u> Court stated: "We concede that ordinary pleading rules are not meant to impose a great burden upon a plaintiff.... [b]ut it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." <u>Id.</u> at 347 [citation omitted].

In the case it bar, as illustrated above, it wasn't difficult to plead in simple terms plaintiff's theory of economic loss. Nothing further is required. Unlike the complaint at bar, the complaint in <u>Dura Pharmaceuticals</u> contained only the bald assertions that the plaintiffs paid

---

[2]The stock also dropped on earlier dates during September 2000 as issues concerning CMGI's liquidity slowly emerged. <u>See</u> Section VI, <u>infra</u> (seeking leave to replead to incorporate information from news articles summarizing the other drops in CMGI's share price when material negative information concerning CMGI's liquidity and cash burn rate was revealed to the markets during September 2000).

"artificial prices" and suffered damages. See id. at 347. Likewise, the complaint in Lentell was completely bereft of allegations that the stocks that were the subject of the Merrill Lynch analyst reports dropped at a time or in a manner that suggested proximate causation of plaintiffs' losses: "There is no allegation that the market reacted negatively to a corrective disclosure regarding the falsity of Merrill's "buy" and "accumulate" recommendations and no allegation that Merrill misstated or omitted risks that did lead to the loss. This is fatal under Second Circuit precedent." Lentell, 396 F.3d at 175.

By contrast, to put it in the simplest terms, Ventura (unlike the Lentell plaintiffs) has pleaded that "the stock dropped when the bad news came out." See DeMarco v. Lehman Bros., Inc., 309 F. Supp. 2d 63 1, 636 (S.D.N.Y. 2004). As the DeMarco Court stated:

> [T]he Complaint adequately alleges that in or around October, 2000 the market was finally apprised of the negative information concerning RealNetworks that had earlier led Stanek to take a secretly negative view of the stock and that, as the result of those revelations, the stock declined, causing the losses on which plaintiff here sues... This suffices for loss causation under any standard.

Quite simply, Ventura (unlike the plaintiffs in Dura and Lentell) has pleaded "facts sufficient to support an inference that it was defendant's fraud-rather than other salient factors-that proximately caused plaintiff's loss." See id. at 177. Therefore, Ventura states a claim and defendants' instant motion must be denied.

B.    Ventura pleads materialization of a concealed risk.

In addition to the allegations of loss causation at ¶¶ 102 and 105 of the Complaint, quoted above, Ventura alleges as follows:

> In fact, the October 4, 2000 CMGI Analyst Report revealed risks previously undisclosed that, when they were disclosed by Defendants in the analyst report, had a negative impact on the market price of the stock. Defendants finally revealed their concerns about

11

looking "too close" at CMGI, which Blodget had previously discussed with Ilona Nemeth on January 20, 2000. If CMGI was double-or triple-counting revenue among its various companies, then its actual revenue would be lower than stated. Defendants knew as early as December 1999 that this created a material risk of future cash flow problems. According to Blodget in the October 4, 2000 CMGI Analyst Report, this risk, of which he had been aware, as detailed above, had materialized.

( C ¶ 90, see also C ¶¶ 2, 7, 32, 36, 37, 69, 74, 90, 94 (f)).

Plaintiff further explains that it was foreseeable that Blodget's misstatements and

omissions would cause plaintiff's losses:

> Blodget knew about, and failed to disclose, the material risk that CMGI would face a cash flow problem within the next few reporting periods. If Blodget had disclosed his true belief about CMGI, it was foreseeable at the time that the market would react negatively, because such a disclosure would put into question CMGI's cash position, and dramatically increase concern over CMGI's ability to continue its operations for a prolonged period without raising additional cash.

( C ¶ 69)

Lentell does not require a plaintiff to plead a corrective disclosure in order to plead loss

causation. Rather, pleading a corrective disclosure is one of several ways that a plaintiff can

plead loss causation. See, e.g., In re Parmalat Sec. Litig., 375 F. Supp. 2d 278, 306 (S.D.N.Y.

2005) (Lentell's "use of the word 'or' indicates that a corrective disclosure is not necessary where,

as here, plaintiffs allege that the subject of the misrepresentations and omissions caused their

loss"); see also Catton v. Def. Tech. Sys., 457 F. Supp. 2d 374, 382 (S.D.N.Y. 2006) ("The

Second Circuit's opinion in Lentell referred to several permissible ways of pleading loss

causation, including direct causation, 'materialization of risk,' and 'corrective disclosure.'");

Swack v. Credit Suisse First Boston, 383 F. Supp. 2d 223, 243 (D. Mass. 2004) (carefully

analyzing Lentell in context of analyst report case and denying motion to dismiss); Suez Equity

Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87 (2d Cir. 2001); Emergent Capital Inv.

12

Mgmt. LLC v. Stonepath Group, Inc., 343 F.3d 189, 193 (2d Cir. 2003)(explaining Suez Equity Investors). City of Sterling Heights Police and Fire Retirement System v. Abbey National PLC, 423 F. Supp.2d 348, 353 (S.D.N.Y .2006); Teamsters Local 445 Freight Div. v. Bombardier, Inc., No. 05-CV-1898 (SAS), 2005 WL 2148919 at *12 (S.D.N.Y. Sept. 6, 2005).

 Here, plaintiff has clearly pleaded that the very undisclosed risk concealed by Blodget in his reports– CMGI's potential for a liquidity crisis as the result of its revenue recognition practices– materialized and, when publicly disclosed, caused CMGI's share price to drop. ( C ¶ 2) This is enough to plead a claim of loss causation under Dura and Lentell.

C. Ventura is not required to plead a "mirror image" disclosure to establish loss causation for purposes of a motion to dismiss.

 The Supreme Court in Dura held that plaintiffs need to do more than establish an inflated purchase price; rather, they must show the economic loss suffered as inflation  comes out of the security, and the causal connection between defendants' conduct and that loss.544 U.S. at 342-46. Dura is notably silent as to the substantive or temporal parameters of loss causation evidence, however.  Instead, the Court held that plaintiffs may demonstrate that they suffered economic loss as the "relevant truth begins to leak out" or as "the truth makes its waly into the market place." Id. at 342-43.

Justice Breyer, <u>Dura</u>'s author, explained at oral argument that inflation could come out in many different ways, not simply by a defendant's admission that "I'm a liar."  Rather, inflation could "ooze[] out as earnings reports come in, but it has to come out." <u>See</u> transcript of oral argument in <u>Dura Pharmaceuticals,</u> available at http://www.supremecourtus.gov/oral_arguments/argument_transcripts/03-932.pdf. pp. 38-39.

Accordingly, <u>Dura</u> does not require an explicit, corrective disclosure (here, that Henry Blodget did not believe the opinions expressed in his reports); plaintiffs need only allege and prove "that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiffs economic loss." 544 U.S. at 346.

<u>Dura</u> did not disturb this Circuit's existing loss causation law.  <u>See, e.g., In re Initial Pub. Offering Sec. Litig.,</u> 399 F. Supp. 2d 261, 266 (S.D.N.Y.  2005) (Second Circuit loss causation standard "is undisturbed by <u>Dura</u>").  Indeed, the Supreme Court cited approvingly to Second Circuit loss causation precedent in overruling the Ninth Circuit. 544 U.S. at 344.   This Circuit has long held that a plaintiff must allege and eventually prove either: (i) a materialization of an undisclosed risk that consequently leads to the plaintiffs' loss, or (ii) a disclosure correcting a prior false statement that causes the loss. <u>Lentell</u> at 173;  <u>see also In re Initial Pub. Offering Sec. Litig.,</u> 297 F. Supp. 2d 668, 675 (S.D.N.Y. 2003) (loss causation pleaded where complaint alleged that defendants knew that inflation caused by their manipulations would eventually dissipate, thereby injuring investors).

Loss causation can be shown by any corrective event causally related to the misrepresentations, whether or not the event explicitly reveals the underlying fraud. <u>See, e.g.,</u> <u>Emergent,</u> 343 F.3d at 192 (finding loss causation prior to revelation of the fraud based on "a

14

causal connection between the subject matter of [the] omissions and the ultimate decline" in the stock's value); see also Suez Equity Investors, 250 F.3d at 98; In re Parnalat Sec. Litig., 376 F. Supp. 2d 472, 5 10 (S.D.N.Y. 2005) ("'[T]he damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission'... [Lloss causation does not, as the defendants would have it, require a corrective disclosure followed by a decline in price. "); Bombardier, 2005 WL 2148919 at *12; DeMarco, 309 F. Supp. 2d. at 636; In re Motorola Sec. Litig., No. 03-C-287, 2007 WL 487738 (N.D. Ill. Feb. 8, 2002) ("mirror image" disclosure not required).

> D.    Ventura pleads loss causation based on actual reliance.

Unlike the class plaintiffs in Lentell and the other Merrill Lynch analyst class actions, Ventura has pleaded that he affirmatively relied on Merrill Lynch's misstatements and omissions. ( C ¶¶ 1, 103, 134 (pleading, inter alia, that Ventura "knew that CMGI was on Defendant Blodget's recommended list, and knew that Merrill Lynch and Blodget had 'buy' ratings on CMGI.")). Ventura has further alleged that he both purchased and continued to hold Merrill Lynch stock based on this reliance. ( C ¶¶ 1, 7, 103, 121, 122, 135, 136)   Contrary to defendants' assertion at n. 9 of their Memorandum of Law, in light of the recent Dabit v. Merrill Lynch case Ventura can assert such a claim for retention of his shares under both Section 10(b) of the Securities Exchange Act and the common law.   Ventura's affirmative reliance on defendants' misstatements provides a separate, independent basis for loss causation.

Prior to the U.S. Supreme Court's decision in Dabit v. Merrill Lynch, courts had long acted under the assumption that such "holder" cases under Section 10(b) are not permitted. However, this presumed rule is no longer good law in light of Dabit, in which the Court held that

15

the longstanding presumed meaning of the phrase "in connection with the purchase or sale of any security" first enunciated by the Second Circuit in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), was wrong. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc. 126 S.Ct. 1503, 1513, 164 L.Ed.2d 179 (2006 )(hereinafter "Dabit").

In Dabit, a Merrill Lynch stockbroker contended that his state law claims based on his continuing to *hold* securities based on Merrill Lynch's recommendations in its analyst reports were not preempted by SLUSA because his holding of the stocks was not "in connection with the purchase or sale" of a security. Dabit, 126 S. Ct. at 1512. Defendant/Petitioner Merrill Lynch maintained that the Dabit action was pre-empted by the broad preemptive force of Title I of SLUSA, which provides that no "covered class action" based on state law and alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security" "may be maintained in any State or Federal court by any private party." 15 U.S.C. 78bb(f)(1)(A).

The Dabit Court held that the meaning of "in connection with the purchase or sale of a covered security" was broad enough to preempt plaintiff/respondent's "holder" claims, because this language applies to any fraudulent conduct that coincides with a securities transaction. Dabit 126 S. Ct. at 1514.

This broad construction of the "in connection with" language contained in SLUSA is drastically inconsistent with Birnbaum's interpretation of the counterpart language in Rule 10b-5. The Birnbaum decision (as elucidated by the U.S. Supreme Court in the well-known Blue Chip Stamps v. Manor Drug Stores case, eliminates three groups of potential plaintiffs from recovering under Rule10b-(5): (1) persons who claim that they would have purchased had the

violation not occurred; (2) persons who held their securities as a result of the violation; and (3) "shareholders, creditors, and perhaps others related to an issuer who suffered loss in value of their investment due to corporate or insider activities in connection with the offer or sale of securities" which violate Rule 10b-(5). See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 737-738, 95 S.Ct. 1917, 1926 (1975); see also Birnbaum, 193 F.2d at 464 (Rule 10b-5 "extended protection only to the defrauded purchaser or seller.").

While Birnbaum clearly would bar all three categories of plaintiffs from asserting claims under Rule 10b-5, Blue Chip Stamps deals only with the first category of plaintiffs- those who never dealt in the subject security. Blue Chip Stamps, 421 U.S. at 725 (first sentence of opinion), 738.

The Dabit Court made it clear that the Birnbaum Court's construction of "in connection with the purchase or sale of any security" was too narrow to comport with previous U.S. Supreme Court constructions of the phrase, including in U.S. v. O'Hagan, 521 U.S. 642, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997). As the Dabit Court stated:

> Moreover, when this Court has sought to give meaning to the phrase in the context of 10(b)and Rule 10b-5, it has espoused a broad interpretation. A narrow construction would not, as a matter of first impression, have been unreasonable; one might have concluded that an alleged fraud is "in connection with" a purchase or sale of securities only when the plaintiff himself was defrauded into purchasing or selling particular securities. After all, that was the interpretation adopted by the panel in the Birnbaum case. See 193 F.2d, at 464. But this Court, in early cases like Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), and most recently in SEC v. Zandford, 535 U.S. 813, 820, 822, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002), has rejected that view. Under our precedents, it is enough that the fraud alleged "coincide" with a securities transaction-whether by the plaintiff or by someone else. See O'Hagan, 521 U.S., at 651, 117 S.Ct. 2199. The requisite showing, in other words, is "deception 'in

connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller." Id., at 658, 117 S.Ct. 2199. Notably, this broader interpretation of the statutory language comports with the longstanding views of the SEC. See Zandford, 535 U.S., at 819-820, 122 S.Ct. 1899.FN10

Dabit, 126 S. Ct. at 1514.

The Birnbaum Court's strict construction of Rule 10b-5 under which only purchasers and sellers of securities have standing to sue is thus inconsistent with the broad construction of the "in connection with" requirement adopted by the Supreme Court in Dabit.

Defendants' citation to the seminal Blue Chip Stamps case for the proposition that the alleged fraud herein does not meet the "in connection with" requirement is unavailing in these circumstances in light of Dabit. In a case, as here, involving an actual shareholder (and therefore, at some point, purchaser of stock) such as Ventura (as opposed to a person such as the Blue Chip Stamps plaintiff, who never dealt in the subject security), there is no reason not to allow a "holder" claim, and such a claim is permissible under the construction of the "in connection with" requirement announced in Dabit. See the very first sentence of the opinion in Blue Chip Stamps, 421 U.S. at 725 ("This case requires us to consider whether the offerees of a stock offering... may maintain a private cause of action for money damages where they allege that the offeror has violated the provisions of Rule 10b-5 of the Securities and Exchange Commission, by where they have neither purchased nor sold any of the offered shares")[3].

---

[3] Cf. In re Alger, Columbia, Janus, MFS, One Group, Putnam Mut. Fund , 320 F. Supp. 2d 352, 355 (D. Md. 2004) (Motz, J.) (the evil of a potentially limitless group of plaintiffs envisioned by the Blue Chip Stamps Court was not present because "the class of potential plaintiffs, although extremely large, is clearly definable: all persons who held shares in the affected mutual funds during the period in which the alleged wrongdoing occurred.").

Express reliance on false and misleading statements constitutes proximate

causation in the common law context, and (in light of <u>Dabit</u>) should suffice here, as well.   Even

without a "corrective disclosure" or drop in the price of CMGI stock as the result of a

materialization of an unforeseen risk, Ventura's reliance on defendants' false and misleading

statements and retention of his CMGI shares in reliance on same are sufficient to establish

proximate cause of his damages. <u>See</u> <u>Kaufman v. Delafield,</u> 224 A.D. 29, 229 N.Y.S.2d 545 (1st

Dep't 1928) As the <u>Kaufman</u> Court stated:

> Certainly a ruling that, since plaintiff bought at market, he might also have immediately
> or soon thereafter sold at market for the same price, and thus have suffered no loss,
> missed the point of the plaint of wrong. The claim was based on an inducement to retain.
> The original misrepresentation is deemed as continuing and the influence of the fraud as
> recurring (and here there was reassurance of promised values), so that the defrauded one
> may sue for damages occasioned by his own inaction, even though he had no
> predetermined notion of selling.

<u>Id.</u>; <u>see also</u> <u>Dabit</u>, 126 S. Ct. at 1514  ("Under our precedents, it is enough that the fraud alleged

coincide with a securities transaction--whether by the plaintiff or by someone else...  The

requisite showing, in other words, is deception in connection with the purchase or sale of any

security, not deception of an identifiable purchaser or seller.") [internal quotation marks omitted];

<u>Marbury Management, Inc. v. Kohn</u>, 629 F.2d 705, 721 (2d Cir.), <u>cert. denied</u>, 449 U.S. 1011

(1980).

IV.    VENTURA PLEADS SCIENTER

To satisfy the <u>scienter</u> element of a Rule 10b-5 claim, plaintiffs must plead

"with  particularity facts giving rise to a strong inference that the defendant acted with the

required state of mind." <u>Novak v. Kasaks</u> 216 F.3d 300, 311-12 (2d Cir. 2000); <u>Rothman v.</u>

19

Gregor,, 220 F.3d 81, 90 (2d Cir. 2000); In re  Scholastic Corp., 252 F.3d at 74; 15 U.S.C. §78u-4(b)(2).

Novak instructs us that in determining whether plaintiffs' allegations suffice, reference must be made to the **totality** of the circumstances pleaded the Complaint "as a whole."  Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.  1989); Yoder v. Orthomolecular Nutrition Institute, Inc., 751 F.2d 555, 562 (2d Cir. 1985).

Indeed, the element of scienter "is generally a question of fact, appropriate for resolution by the  trier of fact."[4] Id.  Moreover, pleading fraud does not "require 'great specificity' provided the  plaintiff alleges enough facts to support 'a strong inference of fraudulent intent.'" Ganino v.  Citizens Utilities Co.,, 228 F.3d 154,169 (2d Cir 2000).

Finally, whether a complaint is adequately pled in regard to scienter under the PSLRA, must be examined on a case-by-case basis.  Novak, 216 F. 3d at 311-12.

Here, plaintiff has established motive and opportunity, as Blodget's compensation was tied to Merrill Lynch banking deal revenue, and Merrill Lynch was trying to close a lucrative (undisclosed) banking deal involving CMGI.  The deal was announced only 21 days after Blodget issued the January 20, 2000 report (issued on the same day that Blodget sent his  e-mail to Ms. Nemeth expressing doubt concerning CMGI's reported affiliate revenues). See C ¶¶ 56-76.  Indeed, Merrill Lynch met with uBid (the company CMGI acquired) only **two days** after the January 20, 2000 report.  ( C ¶ 70)  Had uBid known that Henry Blodget thought CMGI's

---

[4]  In re Scholastic Corp. 252 F.3d at 72 ("we do not require the pleading of detailed evidentiary matter in securities litigation"); In re Indep. Energy Holdings, 154 F. Supp. 2d at 763 ("'great specificity' is not required, so long as plaintiffs allege enough facts to support a strong inference of fraudulent intent").

revenue streams were suspect, it likely would not have wanted to be acquired by CMGI, and Merrill Lynch would have been out its $2.3 million success fee. ( C ¶ 76)

This same fact pattern gives rise to a strong inference of scienter under the recklessness method of pleading scienter, as Blodget's reports were issued in reckless disregard of material undisclosed information that he possessed.  Further, in a case like this one involving an untrue statement of opinion, the falsity and scienter requirements are essentially identical, as the speaker knows whether he believes the statement made. See In re Salomon Analyst Level 3 Litig., 350 F. Supp. 2d 477, 489 (S.D.N.Y. 2004) (stating that scienter and falsity requirements are essentially identical where plaintiff alleges that an analyst conveyed an opinion that he did not sincerely hold in an analyst report).

Here, it is clear that Blodget did not believe the purported opinions expressed in his CMGI analyst reports.  This fact alone establishes falsity and, by connection, scienter.

V.      VENTURA PLEADS COMMON LAW FRAUD

To sustain a claim based upon common law fraud in New York, plaintiffs must plead that defendants made "a representation of fact, which [was] either untrue and known to be untrue or recklessly made, and which [was] offered to deceive the other party and to induce them to act upon it, and which cause[d] injury." Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 250 N.E.2d 214 (1969); see also Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1496 (2d Cir. 1992).

The claim also requires a showing of proximate causation, such that the injury "is the natural and probable consequence of the defrauder's misrepresentation or the defrauder ought reasonably to have foreseen that the injury was a probably consequence of his fraud."

21

Cumberland Oil Corp. v. Thropp, 791 F.2d 1037, 1044 (2d Cir. 1986). Furthermore, in New

York "[t]he rule is clear that where one party to a transaction has superior knowledge, or means

of knowledge not open to both parties alike, he is under a legal obligation to speak and his

silence constitutes fraud." Lefkowitz v. ITM, Inc., 52 Misc.2d 39, 48 (Sup. Ct. N.Y. Sept. 29,

1966).

Defendants ignore the settled principle that under New York law, induced forbearance

from selling (i.e., holding) can support a claim of fraud. Continental Insurance Co. v.

Mercadante, 222 A.D. 181, 225  N.Y.S. 488 (1927); see also Hillel v. Motor Haulage Co., 140

N.Y.S.2d 51, 54 (N.Y. Sup. Ct. Kings Cty. 1955) (holder claims viable where concealment of

material facts induced inaction where action would have been taken); ABF Capital Management

v. Askin Capital Management, L.P., 957 F. Supp. 1308, 1325 (S.D.N.Y. 1995) (Sweet, J.) (It is a

"settled principle that the common law provides a remedy for misrepresentations that induce

retention of securities"); Weinberger v. Kendrick, 698 F.2d 61, 78 (2d Cir. 1982);  Channel

Master Corp. v. Aluminum Limited Sales, Inc. 4 N.Y.2d 403, 176 N.Y.S.2d 259, 262 (1958)

(forbearance resulting from misrepresentation was actionable as common law fraud); Marbury

Management v. Kohn, 629 F.2d 705 (2d Cir. 1980) (judgment awarding damages to investor for

losses attributable to his retention of securities in reliance upon false representations made by his

broker upheld); Hadden v. Consolidated Edison Co. 382 N.E. 2d 1136 (N.Y. 1978); Primavera

Familienstifung v. Askin, 130 F. Supp. 2d 450, 493-95 (S.D.N.Y. 1995) (recognizing that

"investors may bring a claim based on inducement to make and/or retain their investments");

Alvin S. Schwartz, M.D., P.A. v. O'Grady, No. 86-CV-4243, 1990 WL 156274 at *14 (S.D.N.Y.

Oct. 12, 1990) ("[I]t is sufficient that the misrepresentation induce[d] plaintiff to purchase *or*

22

retain his investment"); Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02-CV-1230

(LMM), 2004 WL 1124660 at *5 (S.D.N.Y. May 20, 2004) (motion to dismiss claim that

plaintiff bought, and then continued to hold, securities in reliance on misrepresentations denied,

citing Mercadante); Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 716 F. Supp. 1504, 1525

(S.D.N.Y. 1989) ("[D]isclosure-related common law fraud claims are not restricted to purchases

and sales"); David v. Belmont, 291 Mass. 450, 453, 197 N.E. 83 (Mass. 1935) (where plaintiff

bought some stock and continued to hold some other previously purchased stock based on

misrepresentations by defendants, defendants were liable for all losses caused by subsequent drop

in value of stock); Fottler v. Moseley, 185 Mass 563, 565, 70 N.E. 2d 1040 (Mass. 1904).

 Ventura has also pleaded proximate causation of his damages, as required to state a claim

for common law fraud.  Fraudulent misrepresentations which induce the customer to maintain his

investment may constitute the proximate cause of the loss. See Marbury Management, Inc. v.

Kohn, 629 F.2d 705, 721 (2d Cir.), cert. denied, 449 U.S. 1011 (1980).

VI. LEAVE TO REPLEAD

 "Leave to amend should be freely granted... ." Acito v. Imcera Group, Inc., 47 F.3d 47, 55

(2d Cir.1995).  Plaintiff hereby respectfully requests leave to replead in the event that any

portion of defendants' motion is granted.  The complaint sub judice is Ventura's initial

complaint.

Ventura is gathering information from his brokers further detailing his transactions in CMGI shares and expects to be prepared to plead specific transactions in CMGI shares should the Court hold that this is required. Additionally, Ventura has located press accounts showing that CMGI shares dropped on several days in September 2000 due to concerns about CMGI's liquidity, which would further establish loss causation based on the materialization of a concealed risk. See generally "CMGI Inc.'s Latest Incubation Is Itself," Bloomberg News, September 13, 2000 (estimating CMGI's cash burn at $650 million a year and predicting that it would face liquidity issues and have to sell off assets, as of course eventually occurred (see C ¶ 93)).

In these circumstances, Ventura should be treated like any other litigant and given at least the one opportunity to replead that courts in this Circuit routinely grant virtually as a matter of course. See Oliver Schools, Inc. v. Foley, 930 F.2d 248, 252-53 (2d Cir.1991).

24

## CONCLUSION

For the foregoing reasons and authorities, Ventura respectfully requests that the Court

deny the motion in its entirety and grant such other and further relief as it shall deem just and

proper.

Dated: New York, New York
        October 29, 2007

LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C.

By: _____
    Christopher J. Gray (CG 0334)
460 Park Avenue, 21ST Floor
New York, New York 10022
(212) 838-3221

*Counsel for Plaintiff*
*Ronald Ventura*

25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

RONALD VENTURA,                              :        No. 07-CV-6677 (JFK)
                                             :
                  Plaintiff,                 :
                                             :        **CERTIFICATE OF**
            - against-                       :        **SERVICE**
                                             :
                                             :
MERRILL LYNCH & CO., INC., MERRILL           :
LYNCH, PIERCE, FENNER & SMITH, INC.,         :
and HENRY BLODGET,                           :
                                             :
                  Defendants.                :
                                             :
-------------------------------------------------------------X

CHRISTOPHER J. GRAY certifies under penalty of perjury as follows:

I am over eighteen years of age, reside in New York, New York, and am not a party to this

action.  On the 29th day of October, 2007 I served the foregoing Memorandum of Law upon:

> Scott D Musoff, Esq .
> SKADDEN ARPS SLATE
> MEAGHER & FLOM LLP
> Four Times Square
> New York, New York 10036
>
> Marc B. Dorfman
> FOLEY & LARDNER, LLP
> 300 K Street, N.W.
> Suite 500
> Washington, D.C. 20007

by placing true copies of same in sealed wrappers, postage prepaid, and placing same in a closed

receptacle in the exclusive custody of the U.S. Postal Service, within the State of New York.

Dated:       New York, New York
             October 29, 2007

                                    _____
                                    CHRISTOPHER J. GRAY